IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:10-CR-65 |
| ) | (VARLAN/GUYTON) |
| JOSE DE LA LUZ FELIX-MACIEL, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Dismiss [Doc. 38] the Indictment, filed on March 14, 2011. See 28 U.S.C.§ 636(b). The Defendant also filed a legal memorandum with supporting exhibits [Doc. 39] and an affidavit [Doc. 40]. The Government responded [Doc. 46] to the motion on April 21, 2011. The parties appeared for a hearing on the motion on April 26, 2011. Assistant United States Attorney J. Edgar Schmutzer appeared on behalf of the Government. Attorney Bradley L. Henry represented the Defendant, who was also present. At the conclusion of the hearing, defense counsel requested the opportunity to file a post-hearing brief, and the Government requested time to respond. The Defendant filed a supplemental brief [Doc. 53] on May 2, 2011, and the Government filed its supplemental response [Doc. 54] on May 6, 2011. The Court took the motion, the evidence, and the legal arguments under advisement on the following day.

1

## I. POSITIONS OF THE PARTIES

The Defendant is charged [Doc. 1] with illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b). The Indictment alleges that the Defendant, an alien, was found near Knoxville, Tennessee, on April 28, 2010, after being deported from Calexico, California, on January 3, 2009. The Defendant asks the Court to dismiss the Indictment, because his prior deportation proceeding deprived him of due process and was fundamentally unfair. He argues that the immigration judge failed to advise him of his right to appeal his deportation order[1] at his June 3, 1986 show cause hearing. He argues that he could have obtained a favorable result on direct appeal, because one of his underlying convictions was not a crime of moral turpitude, and, thus, the June 3, 1986 proceeding was fundamentally unfair. In response to questioning from the Court, he also argues that Hit and Run is not a crime of moral turpitude and that the Court cannot rely on this conviction as a basis for the deportation order without also running afoul of Due Process. Accordingly, he contends that his January 3, 2009 removal, based upon the reinstatement of the June 3, 1986 deportation order, was invalid.

The Government responds that the Defendant has failed to meet the statutory requirements for pursuing a collateral attack of a deportation order and that the Defendant's claims are untimely. While the Government avers that it is not clear from the available record whether the Defendant's prior convictions for either Vehicle Theft or Hit and Run qualify as crimes of moral turpitude, it states that the Court cannot reach these substantive issues because the Defendant cannot make the predicate showing necessary for a collateral attack.

---

[1] The Defendant's January 3, 2009 deportation resulted from the reinstatement of his June 3, 1986 deportation order. [Doc. 39, Exh. 4, Warning to Alien Ordered Removed or Deported]

## II. SUMMARY OF THE EVIDENCE

The Court summarizes the evidence from the exhibits attached to the parties' briefs and the Defendant's affidavit [Doc. 40].

Defendant Jose De La Luz Felix-Maciel was born in Guadalupe, Chihuahua, Mexico, on June 12, 1964. [Doc. 39, Exh. 1, Immigrant Visa and Alien Registration; Exh. 6, Alien File–birth certificate, p.13]. The Defendant entered the United States in November 1977, at age 13, and was granted the status of legal permanent resident. [Doc. 39, Exh. 1, Immigrant Visa and Alien Registration] The Defendant was convicted of Felony Hit and Run on March 2, 1983.[2] [See Doc. 39, Exh. 6, Alien File–Information, p. 29] The Defendant was convicted of Vehicle Theft on November 7, 1983, and of Robbery on November 14, 1983. [Doc. 39, Exh. 2, Show Cause Order]

A Show Cause order, dated May 13, 1986, states that the Defendant was subject to deportation because he had been convicted of two crimes, Vehicle Theft and Robbery, involving moral turpitude that did not arise from the same "scheme of criminal misconduct" and ordered that the Defendant appear before an immigration judge. [Doc. 39, Exh. 2, Show Cause Order] The Defendant appeared for his show cause or deportation hearing on May 27, 1986, and requested that the hearing be postponed so that he could obtain counsel. [Doc. 39, Exh. 6, Alien File-Minutes, p.4] At that time, Immigration Judge Robert J. Barrett confirmed that the Defendant had a copy of the

---

[2] While neither party provides a Judgment of conviction for the Hit and Run conviction, the Government asserts in its Response that "[o]n November 7, 1982, defendant was arrested in Mercedes, California, for Hit and Run: Death or Injury. He was convicted on March 2, 1983, of Felony Hit and Run: Death or Injury." [Doc. 46, p.1] In his supplemental brief [Doc. 53, p. 5], the Defendant states that "the only record apparent to Mr. Felix-Maciel showing that a hit and run occurred is a record of deportable alien and a printed summary of criminal history." The Court finds that the Information for Hit and Run on November 7, 1982, contained in the Defendant's Alien File [Doc. 39, Exh. 6, Alien File-Information, p.29] substantiates the Hit and Run conviction.

Show Cause order, a handout advising the Defendant of free legal services, and "the Form I-618 Advisement as to Appeal Rights." [Doc. 39, Exh. 6, Alien File-Minutes, p.4] The Immigration Judge postponed the deportation hearing to June 19, 1986. [Doc. 39, Exh. 6, Alien File-Minutes, p.4] The minutes of the May 27 hearing conclude by stating that "[t]he respondent indicated a full understanding of all his rights and of the above instructions." [Doc. 39, Exh. 6, Alien File-Minutes, p.4]

Before the June 19 deportation hearing, the Defendant sent a handwritten note to the Immigration Judge, dated June 1, 1986, stating as follows: "I like to get my deportation as soon as possible because I can not pay the bond and I been here two weeks already." [Doc. 39, Exh. 6, Alien File-Note, p.5; Doc. 46, Exh. A, Note] Trial attorney notes from June 3, 1986, state that the Defendant appeared *pro se* for his deportation hearing, conceded his deportability, was ordered to be deported, and that both sides waived any appeal. [Doc. 46, Exh. D] The June 3, 1986 Order of the Immigration Judge directed that the Defendant be deported to Mexico and stated "Appeal: Waived[.]" [Doc. 39, Exh. 3, Deportation Order]

In his affidavit [Doc. 40], the Defendant states that he appeared before the immigration court in El Centro, California, on June 3, 1986. He states that he does not recall the Immigration Judge advising him of his right to appeal the deportation order entered that day. He also asserts that he did not make a knowing a voluntary waiver of his right to appeal the deportation order at that hearing. He states that if he had been advised of his right to appeal, he would have exercised that right, and his deportation order would have been declared invalid upon appeal.

The Government alleges that following the issuance of the deportation order, the Defendant was arrested in Knox County, Tennessee, on August 11, 2008, for Aggravated Burglary and entered

4

a guilty plea to misdemeanor trespassing.[3]  [Doc. 46, p.2]  On January 3, 2009, the Defendant was removed from the United States, pursuant to the reinstatement of the 1986 deportation order. [Doc. 39, Exh. 4, Warning to Alien Ordered Removed or Deported]  The Government alleges that the Defendant has also been deported on three other occasions: June 3, 1986; August 27, 2000; and September 25, 2008.  [Doc. 46, p.2]  The Defendant was indicted for illegal reentry on May 11, 2010. [Doc. 1]

### III.  ANALYSIS

The Constitution requires that "[n]o person shall be . . . deprived of life, liberty, or property without the due process of law[.]" U.S. Const. amend. V.  Our Supreme Court has held that the Due Process clause of the Fifth Amendment applies to lawful resident aliens and illegal aliens as well as to citizens.  Matthews v. Diaz, 426 U.S. 67, 77 (1976) (recognizing that "[e]ven one whose presence in this country is unlawful, involuntary, or transitory is entitled to" due process protections); Camara v. Gonzales, 166 F. App'x 840, 843 (6th Cir. 2006) (holding that "[t]he Due Process Clause of the Fifth Amendment protects aliens physically present in the United States as well as citizens").

The Defendant calls for the dismissal of the instant Indictment, arguing that the Government cannot show that he has a lawful prior deportation.  The Defendant contends that he was deprived of the due process of law at his June 3, 1986 deportation hearing, because the Immigration Judge did not advise him of his right to appeal the deportation order and because he did not make a knowing and voluntary waiver of his right to appeal.  He maintains that if he had known of his right to appeal

---

[3]The Government contends that the Defendant was arrested six additional times between March 27, 1986, and August 2008, all in California. [Doc. 46, p.1-2]

5

the deportation order, he would have appealed his deportation order, and it would have been overturned on appeal because he did not have the requisite number of convictions of crimes of moral turpitude. Before the Defendant can mount this collateral attack upon his 1986 deportation order, he must make a tripartite showing that (1) he exhausted all available administrative remedies to seek relief against the deportation order, (2) the deportation proceedings resulting in the deportation order denied the Defendant the opportunity for judicial review; and (3) the entry of the deportation order was fundamentally unfair. 8 U.S.C. §1326(d). Because the Court finds that the Defendant cannot meet the requirements necessary for a collateral challenge to his deportation order, it recommends that the Defendant's Motion to Dismiss Indictment [Doc. 38] be denied, without reaching the substantive question of whether the Defendant's 1983 conviction for Vehicle Theft constituted a crime of moral turpitude.

In order for a defendant charged with illegal reentry to mount a collateral attack against a prior deportation order, the defendant must show that:

> (1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987); United States v. Martinez-Rocha, 337 F.3d 566, 568 (6th Cir. 2003). These requirements are listed in the conjunctive and, thus, must all three be met before the Defendant may bring a collateral attack. United States v. Ponce-Covarrubias, 227 F. Supp. 2d 931, 932 (W.D. Tenn. 2002). In the present

6

case, the Court finds that the Defendant has failed to meet all three of the section 1326(d) prerequisites to a collateral attack.

### A. Exhaustion of Administrative Remedies

The Defendant argues that he exhausted all available administrative remedies with regard to his 1986 deportation order because the immigration judge did not advise him of the right to appeal and he did not knowingly and voluntarily waive that right. He contends that because he did not know that he could appeal the immigration judge's ruling, he could not take any further administrative action. In support of this argument, the Defendant points out that no recording of the June 3, 1986 deportation hearing exists. He argues that the Immigration Court was required to record and maintain the recordings of all removal procedures, but, in this case, he has a certified letter from the U.S. Immigration Court that no recording or transcript of the June 3, 1986 proceeding was made. [Doc. 39, Exh. 5, Certified Letter from U.S. Immigration Court] He contends that the Government bears the burden of showing that he was properly advised of his right to appeal and that he knowingly and voluntarily waived that right. He maintains that the Government cannot make that showing, in light of the absence of a recording or transcript of the proceedings and of his Affidavit [Doc. 40] stating that he was not advised of nor did he waive his right to appeal.

The Government responds that the Defendant waived his right to appeal by requesting deportation and then leaving the United States and that, as such, he has failed to exhaust his administrative remedies. It maintains that the Defendant has the burden of overcoming the presumption that the removal proceedings were valid. It argues that the Court cannot presume from a silent record that the Defendant was not advised of his right to appeal. Moreover, the Government

7

contends that the Defendant wrote a note to the Immigration Judge on June 1, 1986, asking that his deportation take place immediately. The Government argues that this note shows that the Defendant wanted to be deported and had no intention of appealing the deportation order or exhausting his administrative remedies. Accordingly, the Government asks the Court to find that the Defendant waived his appeal and is estopped from attacking his deportation order in the instant criminal case.

According to the Rules of Procedure of the Immigration Court, the court "shall create and control the Record of Proceedings." 8 C.F.R. § 1003.36. Current regulations provide that "[a] decision of the Immigration Judge may be rendered orally or in writing. If the decision is oral, it shall be stated by the Immigration Judge in the presence of the parties and a memorandum summarizing the oral decision shall be served on the parties." 8 C.F.R. § 1003.37. In 1986, the Code of Federal Regulations provided that "[t]he hearing [to determine deportability of an alien] shall be recorded verbatim except for statements made off the record with the permission of the special inquiry officer." 8 C.F.R. § 242.15 (1986). The Court finds that no recording of the Defendant's June 3, 1986 deportation hearing is available. A letter from the Executive Office for Immigration Review states that "[r]ecordings were not found" in the Record of Proceedings in the Defendant's case. [Doc. 39, Exh. 5, Mar. 1, 2011 letter] As a result, the Record of Proceedings that is before this Court consists of the following: The May 16, 1986 Show Cause Order; the May 27, 1986 minutes of the Immigration Court; the May, 27, 1986 Order of the Immigration Judge with Respect to Custody; the trial attorney notes from May 23 and 27 and June 3, 1986; a handwritten note from the Defendant dated June 1, 1986; and the June 3, 1986 deportation order.

In a collateral attack upon a deportation order, the defendant bears the burden of proving both a procedural defect in the deportation proceeding that affects due process and the actual prejudice

8

that resulted from this defect. United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995). The Government contends that the Court cannot assume that the Defendant was not advised of his right to appeal from the absence of a transcript. With respect to a collateral attack upon a judgment of conviction pursuant to a guilty plea, our Supreme Court has held that "it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." Parke v. Raley, 506 U.S. 20, 30 (1992). In the instant case, the Court observes that the deportation proceedings are civil in nature, rather than criminal. Lopez-Mendoza, 468 U.S. at 1038 (providing that a "deportation proceeding is a purely civil action to determine eligibility to remain in this country"). Nevertheless, the presumption that the proceedings were regular, absent some showing of misconduct, still exists:

> There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears: this rule applies as well to every judgment or decree, rendered in the various stages of their proceedings from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated, becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged.

Voorhees v. Jackson, 35 U.S. 449, 472 (1836); see also Radley, 506 U.S. at 30.

The Court finds that the record is not silent with regard to the Defendant's advice of rights and waiver, despite the absence of a recording or transcript of the deportation hearing. The minutes from the May 27, 1986 hearing reveal that the Defendant was provided with a form that advised him of his right to appeal. Moreover, the Immigration Judge stated in the minutes that the Defendant "indicated a full understanding of all his rights and of the above instructions." [Doc. 39, Exh. 6-Alien File-minutes of May 27, 1986 hearing, p.4] The trial attorney notes from the deportation hearing

9

also support a finding that the Defendant waived his right to appeal, because they state "Appeal waived by both sides[.]" [ Doc. 46, Exh. D, trial attorney notes from June 3, 1986] While the handwritten note from the Defendant could be interpreted as either a request to be deported as soon as possible or a request to have his deportation hearing as soon as possible, the trial attorney notes from June 3, 1986, support the former interpretation by stating that the Defendant "Declines to talk to an atty, wants to be deported[.]" Finally, the deportation order itself states the following: "Appeal: Waived[.]" The Court finds that these documents show that the Defendant was advised of his right to appeal his deportation order, that he understood that right to appeal (per the May 27, 1986 minutes), and that he waived his right to appeal.

In his affidavit, the Defendant states "[t]o the best of my recollection, I do not recall, and I do not believe the Court advised me of my right to appeal the Deportation Order entered against me on June 3, 1986." [Doc. 40] The Court finds that above listed documentation contradicts the Defendant's recollection. Thus, the Court has considered the Defendant's statements in his affidavit and still finds that the Immigration Judge advised the Defendant of his right to appeal the deportation order and that the Defendant waived the right to appeal. Accordingly, the Court finds that the Defendant did not exhaust all administrative remedies available to challenge his deportation order directly. Specifically, he did not appeal his deportation order to the Board of Immigration Appeals.

### B. Opportunity for Judicial Review

The Defendant argues that the Immigration Court's failure to advise him of his right to appeal the deportation order deprived him of the opportunity for judicial review. As discussed above, the Court finds that the Immigration Judge did advise the Defendant of his right to appeal, as evidenced

10

by the minutes to the May 27, 1986 hearing, stating that the Defendant was provided with a form advising him of his right to appeal and that he fully understood that right. [Doc. 39, Exh. 6-Alien File–minutes from May 27, 1986 hearing, p. 4] This finding is supported by the trial attorney notes from June 3, 1986, which state that both sides waived any appeal and the deportation order itself which states that the appeal was waived. [Doc. 39, Exh. 3; Doc. 46, Exh. D] Accordingly, the Court finds that the Defendant was provided with the opportunity for judicial review and decided to forego that opportunity.

### C.  Fundamental Fairness

The third of the three requirements for bringing a collateral attack upon a deportation order mandates that the Defendant must show that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). The Defendant argues that the entry of the 1986 deportation order was fundamentally unfair because he was not advised of his right to appeal the deportation order. Moreover, he argues that it is reasonably likely that he would not have been deported if he had been advised of his right to appeal, because he would have pursued an appeal and his appeal would have been successful. He maintains that the deportation order would have been overturned on appeal because Vehicle Theft is not a crime of moral turpitude. He also asserts that his 1982 Hit and Run conviction cannot be substituted by the instant Court for the Vehicle Theft conviction to provide a basis for the deportation order because it, too, is not a crime of moral turpitude and because he was not afforded the chance to respond to the Hit and Run conviction at the 1986 deportation hearing, as is required by Due Process. The Government argues that the Defendant has not met his burden of showing actual prejudice arising from the entry of the deportation order.

11

"To constitute fundamental unfairness . . . a defect in the removal proceedings 'must have been such as might have led to a denial of justice.'" Huicochea-Gomez v. I.N.S., 237 F.3d 696, 699 (6th Cir. 2001) (quoting Dokic v. I.N.S., No. 92-3592, 1993 WL 265166, *3 (6th Cir. July 15, 1993)).[4] In the present case, the Court has found no defect in the *proceedings*. Instead, it has found that the defect alleged by the Defendant (that the Immigration Judge failed to advise him of his right to appeal the deportation order) did not occur. Accordingly, the Defendant cannot show the first part of fundamental unfairness, that there was a procedural defect.

---

[4]The parties agree [Doc. 46, p.9; Doc. 53, p.2 n.1] that the Court of Appeals for the Sixth Circuit has not determined the degree of prejudice required to establish fundamental unfairness under section 1326(d). The majority of circuits have required that the Defendant show actual prejudice to some extent in order to establish fundamental unfairness in the proceedings. United States v. El Shami, 434 F.3d 659, 665 (4th Cir. 2005) (holding that to show fundamental unfairness, an alien must show that "but for the errors complained of, there was a reasonable probability that he would not have been deported"); United States v. Aguirre-Tello, 353 F.3d 1199, 1207-10 (10th Cir. 2004) (requiring that the alien show that there is a "reasonable likelihood" that he would not have been deported had the proceedings been different); United States v. Mendoza-Mata, 322 F.3d 829, 832 (5th Cir. 2003) (holding that "[a] showing of prejudice means that 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported'"); United States v. Fernandez-Antonia, 278 F.3d 150, 158 (2d Cir. 2002) (holding that the "alien needs to prove that he might not have been deported had he been able to exercise his right of direct appeal; he must make some showing that the result might have been different"); United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997) (observing that "for a collateral attack on a now-final deportation order, the defendant must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred"); United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995) (holding that "[a]ctual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'"); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994) (holding the alien "must show that he was prejudiced by the Immigration Judge's failure to inform him of his rights to seek a suspension of deportation or to appeal, because an informed exercise of those rights would have yielded him relief from deportation"); United States v. Holland, 876 F.2d 1533, 1536 (11th Cir. 1989) (observing that "prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing"). Because the Court has found that no procedural defect occurred in the deportation proceedings, it does not need to resolve the question of the degree of prejudice that must result from a procedural error in order to prove fundamental unfairness.

The Court also questions whether the Defendant can show that actual prejudice resulted from the Immigration Judge's allegedly erroneous[5] determination that the Defendant had been convicted of two crimes involving moral turpitude. Even if Vehicle Theft under California Vehicle Code section 10851(a) is not a crime of moral turpitude, the Court finds that at the time of the June 3, 1986 deportation hearing, the Defendant had a third conviction for felony Hit and Run with injury, which was a crime of moral turpitude as committed by the Defendant.[6] Thus, the defendant had convictions

---

[5] The Court does not reach the substantive question of whether the Defendant's 1983 conviction for Vehicle Theft is a crime of moral turpitude.

[6] The Court also finds, contrary to the Defendant's arguments in his supplemental brief, that the Defendant's felony Hit and Run is a crime of moral turpitude. Section 20001(a) of the California Vehicle Code provides that "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 [regarding providing contact information and rendering reasonable assistance to anyone injured in the accident] and 20004 [requiring, in the event of death, the reporting of information to the nearest highway patrol office or police authority]." The Ninth Circuit has determined that hit and run with injury does not categorically involve moral turpitude, because it can be committed "'both by reprehensible conduct (leaving the scene of an accident) and by conduct that was not morally culpable (failing to affirmatively report identifying information)[.]'" Cerezo v. Mukasey, 512 F.3d 1163, 1169 (9th Cir. 2008) (quoting Garcia-Maldonado v. Gonzales, 491 F.3d 284, 288-89 (5th Cir. 2007)).

In the case of such a "devisible" statute, the court must look to certain judicial records to determine whether the defendant was convicted of the version of the crime that involves moral turpitude. Id. The court is bound by the "record of conviction," which is "the indictment, plea, verdict, and sentence, to determine the offense of which the [Defendant] was convicted." Kellerman v. Holder, 592 F.3d 700, 703 (6th Cir. 2010); see also Shepard v. U.S., 544 U.S. 13, 26 (2005) (holding that the court determining whether an offense is a predicate offense under the Armed Career Criminal Act "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information"). In the present case, the Defendant's alien file contains the Information for the 1982 Hit and Run. [Doc. 39, Exh. 6, Alien File-Information, p. 29] The Information charges, in pertinent part, that the Defendant was involved in an accident resulting in injury to the victim, that the Defendant knew the victim was injured, and that the Defendant did "wilfully and unlawfully fail, neglect and refuse . . . to stop immediately . . . and . . . to render all reasonable assistance to the injured person[.]" Accordingly, the Defendant's 1982 conviction for felony Hit

13

for two crimes of moral turpitude (Robbery and Hit and Run) that would support the entry of the 1986 deportation order. Nevertheless, the Court observes that the Defendant's 1982 Hit and Run conviction was not listed in the show cause order. [Doc. 39, Exh. 2, Show Cause Order] Accordingly, the Immigration Court could not have considered the Hit and Run conviction without amending the show cause order. See Chowdhury v. I.N.S., 249 F.3d 970, 975 (9th Cir. 2001) (holding that I.N.S. could not advance on appeal other convictions not listed in the Notice to Appear as a basis for the defendant's deportability); but see 8 C.F.R. 242.16(d) (1986) (providing that the prosecuting "trial attorney who has been assigned to a case may at any time during a hearing lodge additional charges of deportability, including factual allegations against the respondent" and must submit them in writing). Accordingly, the Court does not base its determination of the fundamental unfairness factor on the Defendant's Hit and Run conviction.

In sum, the Court finds that the Defendant cannot show that the entry of the 1986 deportation order was fundamentally unfair because he cannot show a procedural defect in the deportation proceedings.

### D. Timeliness of Collateral Attack

As an alternative basis for precluding the Defendant's collateral attack of his 1986 deportation order, the Government argues that it is untimely. The Government asserts that the Defendant has been deported four times since the entry of his 1986 deportation order and has never sought any review of the deportation order during the twenty-five-year period since his initial deportation. Accordingly, it maintains that the Defendant cannot now be heard to argue that he was

---

and Run was for a crime of moral turpitude.

actually prejudiced by the deportation order.

The Court of Appeals for the Sixth Circuit has held that "twenty-five years is too long to wait to complain of procedural infirmities" and denied a collateral attack of a deportation order. Palma v. I.N.S., 318 F.2d 645, 650 (6th Cir.), cert. denied, 375 U.S. 958 (1963). In Palma, the Court observed that the defendant had not attempted to correct the alleged procedural errors at his deportation hearing at the time he was initially deported nor when he was again deported following an intervening illegal reentry. Id. Nor did Defendant Palma attempt to obtain legal status in the country. Id. In the present case, the Government contends that in the twenty-five years since his initial removal on June 3, 1986, the Defendant has been arrested six times and deported three times. The record before the Court does not reflect that the Defendant ever attempted to enter the country lawfully, to obtain legal status, or to attack any alleged procedural or substantive defects that resulted in the 1986 deportation order. Accordingly, the Court finds that the untimeliness of the Defendant's collateral attack is also a bar to his challenge to his deportation order.

## IV. CONCLUSION

After carefully considering the motions, memoranda, oral arguments, evidence, and relevant legal authorities, the Court finds no basis to dismiss the Indictment. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion to Dismiss Indictment [**Doc. 38**] be **DENIED**.[7]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).